[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to CT Page 12969 this action are not in dispute. The plaintiff and the defendant, whose birth name is Jodi Lea Rohm, and whose prior married name is Jodi Lea Parker, were married at Rochester, Minnesota, on September 26, 1986. The defendant has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date this complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of this marriage, Nicole DeAnda, born December 2, 1988. The parties have one other child who is an adult, Brandon R. DeAnda, born April 28, 1982. The defendant does not have any other minor children. Neither party has received state assistance.
The parties are also in dispute as to the cause of the breakdown of the marriage. Partly as a result of that dispute, what should have been an approximate two to three day trial, wound up being an approximate eight day trial.
The parties are in dispute as to whether the plaintiffs companion, Mrs. Price, called the defendant in January or February, 2000, and stated that the plaintiff would file for bankruptcy and "we will ruin you financially."
The court finds that the defendant has failed to prove that such telephone conversation took place. Further, partly as a result of this dispute, the plaintiff has incurred legal fees of approximately $59,000, and the defendant has incurred legal fees of approximately $38,990.
From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff was born on July 25, 1962. This is his first marriage.
The plaintiff presently takes medication anxiety and depression since December, 1999. He is treated for that condition on a regular basis.
The plaintiff has a liability for the woman he presently lives with in the amount with $68,535.42. That liability was incurred in part as a result of funds that she advanced for him for paying his prior attorney the sum of $21,510.86, and by paying his current attorney the sum of $25,500.
The plaintiff exercised IBM stock options in 1999. After the payment of taxes, he netted approximately $14,524 from the exercise of those options. He used $8000 from the option money to make a payment on his American Express bill. The American Express bill is a credit card that is provided to him by IBM. Any personal charges that he incurs on that card CT Page 12970 he is individually responsible for. The $14,524 was initially put by the plaintiff into a joint checking account. The defendant, when she learned of the exercise of the stock options, removed the money from that joint account and put it into an account in her name and that of the plaintiff. The plaintiff in turn removed all of the funds from the account that the defendant put the money into and put it into an account with his name. These transactions all took place prior to the date the plaintiff signed his financial affidavit on August 6, 1999. That financial affidavit did not reflect the fact that he turned over to his prior attorney money from the exercise of the IBM stock option. The remaining balance of that fund in the amount of $11,725 is presently held in escrow by counsel for the defendant.
In 1995, IBM offered the plaintiff a job in New York. He was then transferred to the IBM headquarters in White Plains, New York. The defendant remained in Texas in 1995 for the children to complete their school year. The parties then purchased the present home they own at 39, Virginia Court, Ridgefield, Connecticut.
The fair market value of the family home is $245,000. It has a first mortgage with an approximate balance of $188,000 and total equity of approximately $57,000. The home is ideally suited insofar as attendance at school with Nicole's present school being approximately 300 yards away and the high school being even closer. The purchase price of the home was approximately $210,000. IBM purchased the home that the parties owned in Texas, and the profit from the Texas sale went towards the purchase of the Ridgefield, Connecticut home. The plaintiff also borrowed $5000 from a friend towards the purchase of the Connecticut home that was repaid the following year. The parties also obtained a mortgage as part of the financing of the family home.
In August, 1997, as a result of a domestic violence dispute, the plaintiff vacated the family home. He successfully completed a course in anger management and the charge against him was nolled. After vacating the family home, he went back to Iowa to live with his brother, although continuing his employment with IBM in New York. He lived in Iowa from August, 1997 to December of 1998 or January of 1999. Although he was living in Iowa for a period of time, he still intended Connecticut to be his legal residence. He then moved to Florida where he resided with a high school friend, Bryant Stormer. His employment at IBM as a consultant allowed him to establish a residence in Iowa. As an IBM consultant, he was traveling throughout the United States. He has not lived in the Ridgefield, Connecticut, home since August, 1997. The plaintiff and the defendant continue to have regular contact with each other between August, 1997 and July, 1999 including a trip to Disney World in Florida in December of 1997 with the plaintiff, the defendant, their daughter and CT Page 12971 the defendant's mother, and a trip to Hawaii with the plaintiff, the defendant and their daughter.
On January 31, 2000, he received an IBM gross bonus of $1666. On February 29, 2000, he received a $2500 gross team award. On March 31, 2000, he received a variable pay gross award in the amount of $10,984.46, with a net from that variable pay of $6261.13. In May of 2000, he received a gross annual salary increase of approximately 10 percent of his base pay. The plaintiff is presently not part of the IBM bonus program and will therefore not receive any further bonuses. He is still eligible to receive a team award and variable pay award, although neither is guaranteed.
The plaintiff has received both the bonus pay and the variable pay even in those years when IBM has not done well financially. The plaintiffs current financial affidavit does not reflect prior bonus money that he has received, variable pay money that he has received, or team award money that he has received. It only reflects his base pay.
The plaintiffs current gross weekly income at IBM is $2332 (excluding bonus, team award and variable pay award), and his gross annual income is $121,264. On the basis of his gross weekly income being $2332, and the defendant's current gross weekly income of $868.90, his child support obligation would be $246 per week, and he would be responsible for 58.61 percent of unreimbursed medical and 58.61 percent of qualifying day care cost. He has a monthly expense for a car loan for the 1995 Plymouth Voyager in the amount of $343. The plaintiff has bank accounts totaling $132. The parties own a 1993 Toyota in joint names, with a fair market value of $8200. The parties also own a 1995 Plymouth Voyager that the defendant operates with a total value of $7300 and a loan balance of $4108, for an equity of $3192. The Plymouth Voyager is presently used as security for the Texas IBM EFCU line of credit. He presently has vested 326 vested IBM stock options that can be exercised in the calendar year 2000. IBM stock is currently listed at $91,4375 per share. He also has 325 nonvested IBM stock options that can be exercised in the calendar year 2001, and 325 non-vested stock options that can be exercised in the calendar year 2002. He has life insurance through his employer in the face amount of $277,000. He owes 500 shares of Pets Med stock with a value of $6250. The parties are also in dispute as to whether he has an ownership interest in a Seadoo. The plaintiff claims that Rhonda Price and his friend Bryant Stormer purchased it but put it into his name. He therefore claims to have no financial interest in it. The court finds that the plaintiffs claim that he does not have an interest in the Seadoo at best is not credible. The plaintiffs financial affidavit dated August 30, 1999 showed that he had a one-half interest in the Seadoo with a value of $4000. The Seadoo was purchased and shipped to the plaintiff at CT Page 12972 his then Florida residence in June, 1999 at a total purchase price of $8151. This was after the present dissolution of action marriage was commenced. From the evidence presented, the court finds that he has a one-half interest in the Seadoo jet ski and that the one-half interest has a fair market value of $4000.
He has a deferred compensation plan through IBM with a fair market value of $46,548. He has liabilities totaling $161,903 consisting of the following:
(a) VISA with a balance of $9140.
(b) On July 25, 2000, the parties stipulated that the plaintiff will indemnify and hold the defendant harmless as to the following debts: (1) the Voyager loan with a balance of $4108; and Texas IBMEFCU with a balance of $6707, for which the to be fair and equitable and enters orders in accordance with it.
(c) Unipac Services Corp. with a balance of $29,421.
(d) University of Chicago with a balance of $955 (this debt was incurred while the plaintiff was at the University of Chicago).
(e) EFG Technologies (two accounts) with a balance of $21,420 (this was a graduate school loan).
(f) USA Group with a balance of $16,731 (this was a graduate school loan).
(g) Rhonda Price with a balance of $68,635. The plaintiff has resided with Rhonda Price since August, 1999.
(h) Citibank Florida with a balance of $794.
(i) Citibank MasterCard with a balance of $2917 (this debt was incurred since the fall of 1999.
(j) Michael Alexander, CPA, with a balance of $1070 (Mr. Alexander was hired by the plaintiff in early 2000 as a result of being recommended by his prior attorney to assist the plaintiff in complying with interrogatory and production requests filed by the defendant).
Immediately after the parties married, they moved from Minnesota to Santa Clara, California. When the parties were living in Santa Clara, California, the plaintiff decided to obtain a master's degree in business administration. He applied to the University of Stanford and was CT Page 12973 rejected. He was accepted at the University of Chicago. His employer, IBM, would have paid for the cost of his master's degree if he had obtained it in the field of engineering. He attended the University of Chicago from September, 1990 to June, 1991. After completing his first year at the University of Chicago in June, 1991, IBM offered him a job in Austin, Texas, and the parties agreed to make that move. They moved to Austin, Texas, in June, 1992. His first year at the University of Chicago cost approximately $30,000 with the tuition portion approximately $17,000. While attending the University of Chicago, he was not employed.
The plaintiff returned to the University of Chicago in the fall of 1992. His total annual expenses for that school year were approximately $45,000. The school year was from October, 1992 to June, 1993.
The plaintiff borrowed $5000 from Bryant Stormer and $5000 from another person for his college expenses. These loans have since been repaid. After obtaining his MBA in June of 1993, he returned to Texas. When he returned to Texas following graduation from the University of Chicago in the fall of 1993, his employment with IBM was changed to that of strategy analysis. He had deductions on his 1994 income tax return of $3408 for job search expenses in 1994 in Europe. He was reimbursed approximately $700 for part of those expenses. He then went to Europe in 1994 seeking employment but was not successful.
The defendant received a settlement for a 1991 motor vehicle accident in the amount of $5000 as a result of injuries she received. The $5000 went into a joint account to be used for family expenses.
She also received a settlement for a motor vehicle accident in the amount of $4500 that also went to be used for family expenses. During the plaintiffs first nine months in graduate school at the University of Chicago, the plaintiffs income was the sole source of for the plaintiff and the two children to live on.
In 1997, the parties filed a joint income tax return and had total combined income of $143,784. The plaintiff had IBM income of $101,792, and defendant had income of $41,992. In 1998, the parties filed a joint income tax return and had a gross combined income of $171,652. The plaintiff had gross income at IBM of $128,192, and the defendant had gross income at Bristol-Myers Squibb Company of $43,400.
The defendant was born on the June 17, 1961. This is her second marriage.
The defendant is currently employed by Bristol-Myers Squibb Company. Her gross weekly salary is $868.90. She has a People's bank account with a balance of $713. She has savings accounts totaling $3585.21. She has CT Page 12974 three life insurance policies that have no cash surrender value consisting of the following: (a) life insurance policy on her life through her employer in the face amount of $129,000; (b) State Farm insurance policy on her life that was taken out by the plaintiff in the face amount of $100,000; and (c) a policy through her employer on the plaintiffs life in the amount of $43,000. She owns 800 team shares of Bristol-Myers at $28.92 vested and 200 team shares at $73.28 one-third vested only. As of July 24, 2000, Bristol-Myers stock was trading at $50.56. The approximate total value of the Bristol-Myers stock is $17,312. She also has an interest in the furniture and furnishings at the family residence. She has credit cards with American Express with a total amount due of approximately $2322, and owes attorney's fees with a balance of approximately $27,000.
Shortly after the parties married and moved to Santa Clara, California, the defendant obtained employment at Caldwell-Banker. She then obtained employment at Northern Distributing as a customer representative.
After the parties moved to Austin, Texas, in June, 1991, the defendant obtained employment at Dell Computer.
After moving to Connecticut, the defendant obtained employment with Bristol-Myers Squibb Company in customer service.
The parties stipulated on July 27, 2000 that as of July 15, 2000 there is a arrearage in the amount of $4090.07. Of the total arrearage, 60 percent ($2454.04) is for alimony and 40 percent ($1636.03) is for child support. The arrearage is being paid as a result of an immediate wage execution at the rate of $43.33 per pay period.
The parties have stipulated regarding the issue of custody and visitation in which the plaintiff has accepted the proposal under the defendant's proposed orders dated July 8, 2000. The court finds that that stipulation regarding custody and visitation to be fair and equitable and in the best interests of the minor child and therefore enters orders in accordance with that stipulation.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees, and has considered the provisions of §§ 46b-56 and 46b-56 (a) regarding the issue of custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support. The court enters the following orders: CT Page 12975
 ORDERS
A. DISSOLUTION OF MARRIAGE
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $500 per week. To the extent that the plaintiffs annual income exceeds $121,264, he is to pay to the defendant as additional alimony an amount equal to 25 percent of the difference between $121,264 and the amount he earns. For the purpose of this additional alimony, his income is intended to mean the amount shown on his W-2 and/or 1099. It does not include income from the exercise of stock options. For the calendar year 2000, the $121,264 is to be prorated. By way of illustration, if instead of $121,264, the base amount was $120,000, and this decision was filed on October 31, 2000, then the 25 percent additional alimony would be based on the amount he earned for the last two months in 2000 in excess of $20,000. The additional alimony is also to be prorated during the calendar year that alimony terminates. The 25 percent additional income is to be paid by the plaintiff to the defendant within thirty days from the date the excess income is received by the plaintiff.
2. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) the date that the child reaches age eighteen. The defendant will have less need for alimony when the child is eighteen as the defendant will no longer be responsible for her share of supporting the child.
3. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable. The term of alimony cannot be extended.
4. The plaintiff is to name the defendant as beneficiary of $156,000 of his $277,000 life insurance policy that he has through his employer. This obligation to maintain the life insurance terminates upon the termination of his alimony obligation. He is to provide to the defendant annually commencing one year from the date this decision is filed and annually thereafter, written verification that she is the designated beneficiary of such insurance policy and that such insurance policy is not encumbered or restricted in any way. In the event that for any reason he has not maintained said insurance at the time of his death, while the obligation to maintain such insurance was in full force and effect, then the same shall be a charge against his estate. CT Page 12976
5. The plaintiff is to pay in full all Illinois parking tickets and fines and expenses arising out of the use by the plaintiff of any vehicle registered under the defendant's name. He is to hold the defendant harmless from such liabilities.
C. BY WAY OF SUPPORT
1. The plaintiff is to pay to the defendant support in the amount of $246 per week, and is to pay 58.61 percent of unreimbursed medical and qualifying child care costs. The plaintiff is to maintain health insurance for the minor child as is available through his place of employment.
2. The plaintiff has a right to take the minor child as a dependency exemption for each year in which he is current in his support obligations and unreimbursed medical and qualifying day care obligations and alimony obligations at the end of such calendar year.
3. The defendant is not to permanently relocate outside the State of Connecticut with the minor child without prior court approval.
4. The court finds that it has jurisdiction regarding the minor child under the Uniform Child Custody Jurisdiction Enforcement Act.
5. Any additional pendente lite arrearages both for alimony and support between the date that this hearing completed and the date this decision is filed are not merged into the judgment and survive the judgment. Any pendente lite arrearage is to be paid at the rate of $43.33 per pay period. The stipulation entered into between the parties on July 27, 2000 is approved of and is incorporated into this decision.
6. The plaintiff is to name the minor child Nicole as beneficiary of $100,000 of his $277,000 life insurance policy that he has through his employer until the child reaches the age of eighteen. He has a right to reduce that amount by $15,000 annually commencing one year from the date this decision is filed. In the event that for any reason he has not maintained said insurance at the time of his death, when the obligation to maintain such insurance was in full force and effect, then the same shall be a charge against his estate.
7. By agreement of the parties, the new support order is retroactive to July 26, 2000. The plaintiff has a right to credit any overpayment that he has made on support against the arrearage that he owes.
D. BY WAY OF CUSTODY AND VISITATION CT Page 12977
1. The defendant shall have sole legal custody of the minor child. The plaintiff is granted visitation in accordance with the following schedule: every other Sunday from 11 a.m. to 7 p.m., except on holidays, plus the following days: (a) the Monday Martin Luther King Day is celebrated on; (b) the Monday President's Day is celebrated on; (c) the Monday Labor Day is celebrated on; (d) the Monday Memorial Day is celebrated on; the Monday Columbus Day is celebrated on; (f) Good Friday; (g) Father's Day.
E. BY WAY OF PROPERTY ORDERS
1. The stipulation entered into between the parties on July 25, 2000 regarding the Plymouth and Texas IBM EFCU loans is approved of and is incorporated into this decision. He is to pay all other liabilities listed on his financial affidavit and hold the defendant harmless therefrom. The plaintiff is to transfer to the defendant all of his right, title and interest in the 1995 Plymouth Voyager by November 30, 2000.
2. The defendant is to transfer to the plaintiff all of her right, title and interest in the 1993 Toyota Camry by November 30, 2000.
3. All bank accounts shown on the plaintiffs financial affidavit are awarded to the plaintiff.
4. The plaintiff is to transfer to the defendant one-half of the 326 vested IBM stock options, and one-half of the 650 non-vested items IBM stocks by November 30, 2000.
5. The Pets Med shares of stock owned by the plaintiff are awarded to the plaintiff.
6. The plaintiffs interest in the Seadoo jet ski is awarded to the plaintiff.
7. The plaintiff is ordered to transfer to the defendant by QDRO one-half of his IBM pension plan. The plaintiff is to pay for the cost of preparing the QDRO.
8. The defendant is awarded exclusive use and possession of the family home until the earliest of the following: (a) the minor child reaches age eighteen; (b) the death of the plaintiff; (c) the death of the defendant; (d) the commencement of a foreclosure action on the family home; (e) the family home is no longer the principal place of residence of the defendant and the minor child. Upon the earliest of the above CT Page 12978 events, the family home is to be sold and the net proceeds are to be divided as follows: (a) the defendant is to receive the amount by which the existing first mortgage balance has been reduced; (b) the defendant is to receive the amount of any capital improvements paid by her for the residence. A capital improvement is any expense for the family home that exceeds $300; (c) the remaining net balance of the sale price is to be divided as follows: 50 percent to the plaintiff, and 50 percent to the defendant. During the period that the defendant occupies the family residence, she is to keep the mortgage, homeowner's insurance and real estate taxes current.
9. The bank accounts shown on the defendant's financial affidavit at People's Bank as well as the savings accounts shown on her financial affidavit at Ridgefield Bank are all awarded to the defendant.
10. The 800 team shares of stock as well as the 200 team shares of stock shown on the defendant's financial affidavit are ordered divided equally between the parties.
11. All personal property, furnishings and furniture in the possession of the defendant are awarded to the defendant.
12. The defendant is to pay the liabilities shown on her financial affidavit and hold the plaintiff harmless therefrom.
13. The escrow account in the amount of $11,725 held by the defendant's attorney is awarded to the defendant.
14. The defendant's financial affidavit shows approximately 972 shares IBM stock. The shares of IBM stock that she owns, if any, are divided equally between the parties with the division to be completed by November 30, 2000.
15. All furniture and furnishings in the possession of the plaintiff are awarded to the plaintiff.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
CT Page 12979 2. The parties are to exchange copies of their federal and state income tax returns by certified mail return receipt or registered mail return receipt within thirty days after such returns have been filed for so long as there is an outstanding alimony order and/or an outstanding support order or any outstanding arrearage regarding either or both orders.
3. Counsel for the defendant is to pay to Attorney Ellen B. Lubell $100 and is to pay to Deanna S. Levine $100 by November 30, 2000.
4. An immediate wage execution is authorized for the support order entered herein, alimony order entered herein, and arrearage order entered herein.
5. The defendant has the right to claim all interest and real estate tax payments on the family residence for the calendar year 2000.
Axelrod, J.